# THE SCOTTISH UNION AND NATIONAL INSURANCE COMPANY OF EDINBURGH *vs.* LEO KEENE, Surviving Partner of DANIEL LANGFELD.

*Fire Insurance—Proof of Loss When Books are Destroyed—Conditions of Policy—Examination of the Assured—Signing the Examination—Evidence.*

A policy of fire insurance on certain goods provided that in the event of a loss the assured should furnish a detailed statement of the stock and materials on hand at the time of the fire, setting forth the cash value of each item thereof and the extent to which each article was damaged.   The property covered by the policy was totally destroyed by fire as were also most of the books of the assured, who was consequently unable to make the precise statement called for by the policy.   The books saved from the fire were the day-book, showing the amount of sales, the purchase-book showing the amount of merchandise bought for eleven months prior to the fire, and a book showing the amount paid out for manufacturing during this period. *Held,*

1st. That from these books and testimony as to the usual profit made on sales, the plaintiff (the assured) was entitled to prove the value of the goods on hand at the time of the fire, since such proof showed the amount of his loss with a reasonable degree of certainty, and was legally sufficient to enable the jury to find the amount of the loss suffered.

2nd. That under the circumstances of the destruction of all the property and most of the plaintiff's books, he was not required to furnish to the insurer a statement showing exactly all of the property contained in the building covered by the policy, and the cash value of each item and the amount of loss thereon.

3rd. That if the jury should find that the plaintiff's loss exceeded in amount the whole of the insurance upon the property described in the policy, he is entitled to recover the full amount mentioned in the policy.

Where the assured is a manufacturer and all the stock of goods on hand as well as most of his books are destroyed by fire, the amount of the loss may be shown by proving the total value of all goods during the year, the amount of sales, and the usual profit on sales during that and previous years.

Where a policy provides that after a loss the assured shall submit to an examination under oath by an agent of the insurer and subscribe the same, and the assured does submit to an examination, but does not subscribe the report thereof because not correct, and no demand for a subscription is made by the insurer upon the assured, such failure to subscribe the report of the examination is not a bar to an action on the policy.

The policy in this case provided that the assured should, as often as required, submit to examination under oath by any person named by the company and subscribe the same. The assured was examined by an adjuster, but did not sign the stenographic report thereof. There was no evidence that this adjuster had been named by the insurer. *Held*, that evidence that the adjuster refused to allow the assured to correct errors in the examination was irrelevant.

Evidence as to what was said by the adjuster of the company when he handed to the adjuster of the assured a copy of the examination of the latter, is not admissible.

The policy sued on in this case provided that if a fire occurred the assured should furnish a copy of all descriptions and schedules in all policies. Defendant's policy was for $5,000. Plaintiff's proof of loss gave the names of sixteen other companies insuring the same property with their respective dates and amounts, showing a total insurance of $40,000 and a total loss of $44,000, and stated that full copies of the written portions of all other policies were thereto annexed or would be furnished on demand. *Held*, that this condition of the policy was substantially complied with.

The statements contained in the proofs of loss furnished by the assured to the company are not evidence of the fact or extent of the loss.

Appeal from a judgment of the Superior Court of Baltimore City (RITCHIE, J.) The conditions of the policy of insurance sued on, which are referred to in the opinion of the Court, are as follows:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by

said insured, stating the knowledge and belief of the insured as to the time and origin of the fire ; the interest of the insured and of all others in the property, the cash value of each item thereof and the amount of loss thereon ; all incumbrances thereon ; all other insurance, whether valid or not, covering any of said property ; and a copy of all the descriptions and schedules in all policies."

" The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein designated, and submit to examinations under oath by any person named by this company, and subscribe the same ; and, as often as required, shall produce for examination all books of account, bills, invoices and other vouchers or certified copies thereof if originals be lost, at such reasonable places as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

The summary of the statement of loss furnished by the plaintiff was as follows :

Stock on hand Jan. 1st, 1893..$ 22,131 46
Merchandise purchased from
    Jan. 1, 1893, to date of fire.  107,821 00
Cost of manufacturing........   35,311 04   $165,263 50

Total amount of sales from Jan.
    1, 1893, to Dec. 2, 1893..$169,215 25
Less 40 per cent. profits......   48,347 00   $120,868 25

                                             44,395 25
Freight, cartage, expressage,
    &c., 1 per cent...........             443 95

    Total loss...........  ..   $ 44,839 20
Machinery, sound value,
    $4,310, loss.............$    4,310
Furniture and fixtures, sound
    value, $956, loss.....  ....        956
At the trial the first exception was taken to the ruling of

the Court in permitting the following question to be asked the plaintiff's bookkeeper, who was a witness : " Could you tell the jury what the average profits of Langfeld & Co. were at the time of starting in 1885 down to 1893, inclusive of 1893 ; the average ?   To this question the witness replied : " The average is always about the same ; the only difference is in the volume of business."

The second exception was taken to the action of the Court in allowing the same witness to answer the question :  " You were with Wiesenfeld & Co., and with the knowledge you acquired in other branches of manufacturing clothing and articles of that sort is the profit of 40 per cent. a reasonable or unreasonable one ?"   .

In the third exception the plaintiff was allowed, against the objection of the defendant, to answer the question : " What profit, can you tell from memory, was made by you as to the average, that is as to the percentage of profits, from 1885 to 1893 ?"

The other exceptions are stated in the opinion of the Court.

The plaintiff offered the following prayers :

*Plaintiff's 1st Prayer.*—If the jury find that the defendant made the policy of insurance offered in evidence, and delivered the same to the plaintiff; and if they further find that the property described in the said policy, and so insured, was totally destroyed by fire on or about the second day of December, 1893 ; and that the defendant had notice of the fire at the time thereof, and that the plaintiff did furnish the proofs of loss referred to in the evidence, together with the certificate of the magistrate referred to, and did furnish, so far as it was possible for him so to do, an inventory of the property destroyed by fire aforesaid, stating the quantity and cost of each article and the amount claimed thereon ; and did furnish, so far as it was possible for him so to do, the cash value of each item and the amount of loss thereon ; and did also furnish the copy of all the descriptions and schedules in all policies, then the plaintiff is entitled to re-

cover in this action.    But if the jury find that the plaintiff
did not furnish substantially, so far as it was possible for
him to do so under the circumstances, an inventory of the
property destroyed, stating the quantity and cost of each
article, and the amount claimed thereon, and the cash value
of each item and the amount of loss thereon, then the plain-
tiff is not entitled to recover.    (Granted).

*Plaintiff's 2nd Prayer.*—If the jury find that the plaintiff
submitted to the examination referred to in the policy given
in evidence, but did not subscribe the stenographic state-
ment thereof, when reduced to writing, because the same
was full of errors, if they so find, and that no demand for
such subscription was ever made by the defendant on said
plaintiff, and no insistance upon such subscription made
known to the plaintiff by said defendant, then the excuse for
not signing such statement, if so found by the jury, is suf-
ficient in law, and the plaintiff is entitled to recover in this
action, provided the jury shall find the facts stated in the
first prayer of the plaintiff.    (Granted).

*Plaintiff's 4th Prayer.*—That if the verdict of the jury is
for the plaintiff, the jury, in estimating the damages, must
find the actual cash value of the whole property destroyed
at the time of the fire, as given in evidence, and if·the jury
shall find that the whole loss of the plaintiff exceeded in
amount the whole amount of the insurance on the property
described in the policy as insured in the seventeen compa-
nies referred to in the evidence, then their verdict should be
for the full amount insured in the policy in suit.  (Granted).

And the defendant offered the following prayers :

*Defendant's 1st Prayer.*—That upon the pleadings and
evidence in this case the plaintiff is not entitled to recover,
because it appears from the evidence offered on behalf of
the plaintiff, that the said plaintiff never rendered to the de-
fendant such a proof of loss as is in the policy offered in
evidence required to be rendered, although the rendering of
the same was duly demanded by the defendant, and their
verdict must be for the defendant.    (Rejected).

*Defendant's 2nd Prayer.*—That upon the pleadings and evidence in this case the plaintiff is not entitled to recover, because, it appears from the uncontradicted testimony offered on behalf of the plaintiff, that plaintiff did not render the defendant within sixty days after said fire, nor at any time thereafter, a statement containing the cash value of each item of property alleged by the plaintiff to have been injured or destroyed by said fire, and the amount of loss thereon, as in and by said policy offered in evidence he was required to do, although the said defendant demanded the same, and their verdict must be for the defendant. (Rejected).

*Defendant's 3rd Prayer.*—That upon the pleadings and evidence in this case the plaintiff is not entitled to recover, because, it appears from the uncontradicted evidence offered on behalf of the plaintiff, that the insured did not within sixty days after the fire, nor at any time thereafter, render to the defendant a statement setting forth what, if any, merchandise, dry goods, ladies' ready-made clothing or materials used in the business of the insured, contained in the building situate at number thirty-two South Paca street, Baltimore, Maryland, were damaged or destroyed by the fire mentioned in the evidence, and give the cash value of each item thereof and the amount of loss thereon, as by the terms of the policy offered in evidence the insured were required to do, although it appears from the uncontradicted evidence offered on behalf of the plaintiff, that such statement was duly demanded by the defendant, and the plaintiff after the fire had in his possession his books of account showing all purchases of merchandise made by said insured prior to said fire, and all sales made by said insured prior to said fire, and their verdict must be for the defendant. (Rejected).

*Defendant's 4th Prayer.*—That upon the pleadings and evidence in this case the plaintiff is not entitled to recover, because there is no evidence in this case legally sufficient to enable the jury to find what merchandise, dry goods, ladies' ready-made clothing and materials used in the business of

the insured were contained in the building situate No. 32 South Paca street, Baltimore, Maryland, at the time of the fire mentioned in the evidence, which were damaged or destroyed by said fire, and their verdict must be for the defendant.    (Rejected).

*Defendant's 5th Prayer.*—That upon the pleadings and evidence in this case the plaintiff is not entitled to recover, because there is no evidence in this case legally sufficient to enable the jury to find what amount, if any, of loss or damage to merchandise generally consisting particularly of stock of dry goods, ladies' ready-made clothing and all materials used in the insured business as manufacturers, contained in the six-story brick building situate No. 32 South Paca street, Baltimore, Maryland, was suffered by the insured by reason of the fire mentioned in the evidence, and their verdict must be for the defendant.    (Rejected). ·

*Defendant's 6th Prayer.*—Inasmuch as the uncontradicted evidence shows that the plaintiff submitted to an examination under oath under the terms of the policy by a person named by the defendant company, that the plaintiff has wholly failed to subscribe said examination as he was required to do by the conditions of the policy, and inasmuch as the performance of the condition of said policy is by the terms of the policy made a condition precedent to the bringing suit on the policy, the jury are instructed that this suit is prematurely brought and their verdict must be for the defendant.    (Rejected).

*Defendant's 7th Prayer.*—Inasmuch as the uncontradicted evidence shows that the plaintiff did not furnish a copy of all the descriptions and schedules in all policies as he was required to do under the terms of the policy sued on, and inasmuch as the evidence shows that such description and schedules were duly demanded by the defendant, the jury are instructed that their verdict must be for the defendant. (Rejected).

And the defendant at the time of the offering of the plaintiff's prayers and before they were granted, filed the following written exceptions thereto :

Defendant specially excepts to the plaintiff's first prayer, for the reason that there is no evidence from which the jury can find that the property described in the policy offered in evidence and thereby insured, was, as alleged in said prayer, totally destroyed by fire on or about December 2d, 1893; or that the plaintiff did furnish proofs of loss, so far as it was possible for him so to do—or that he furnished, so far as it was possible for him to do, the cash value of each item and the amount of loss thereon.

Defendant specially excepts to plaintiff's fourth prayer, for the reason that there is no evidence to show the actual cash value of the whole property destroyed, nor any evidence from which the jury can find that the whole loss of the plaintiff exceeded the amount of the insurance upon said property described in the seventeen companies referred to in the evidence.

And the Court granted all the prayers offered by the plaintiff, and rejected all the prayers offered by the defendant, and the Court, of its own motion, granted the following instruction of its own :

The jury are instructed, if their verdict should be for the plaintiff, that they are not to consider any statements contained in the proofs of loss as evidence of the fact or extent of the plaintiff's loss, but such fact and the extent of loss must be ascertained from the other evidence in the case.

The jury returned a verdict for the plaintiff for $5,554.16.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

*N. P. Bond* (with whom were *Geo. Morris Bond* and *Edward Duffy* on the brief ), for the appellant.

It is to be observed that by the policy the insured was required to furnish the company an itemized statement, showing the property destroyed and the cash value of each item thereof; and if there was a dispute or disagreement as to the amount of loss, the amount was to be ascertained by appraisal, the appraisers to "state separately the sound

value and damage." The company repeatedly demanded such a statement, but the insured failed to render the same, excusing such refusal on the ground that his books were burned. As a matter of fact, however, the insured has never, either in any proofs rendered to the company, or in testimony rendered in this case, mentioned one single article which was on his premises at the time of the fire, for the loss whereof he claims compensation under the policy. The only statement rendered the company and the only statement offered in evidence before the jury was the statement filed with the proofs of loss. This statement showed:

Stock on hand, January 1st, 1893 . . . . . . . . . . $22.131 46
Merchandise purchased to date of fire . . . . , . . 107,821 00
Cost of manufacturing . . . . . . . . . . . . . . . . . . . . . 35,311 04

Total cost value of stock . . . . . . . . . . . . . . . . $165,263 50

This was the total value of all goods in his store during the year. The next item shows that during the same period he sold out of this stock goods to the total amount of $169,215.25.

*Prima facie*, it would seem that he had sold all the goods he had, but he proceeds to deduct a 40 per cent. gross profit from such sales, which would leave a certain amount of goods unsold, which he claims were destroyed by fire. It is submitted that although the plaintiff could not, notwithstanding the provisions of the policy, be prevented from recovering because of his inability to furnish particulars of his loss, yet, when he makes no attempt to particularize a single article destroyed and bases his claim on a claim that he made certain profits represented in goods, for the loss of which he claims generally, the existence of such profits should be proved by clear, direct and certain testimony, not left to be inferred or guessed at by the jury from uncertain data. He should at least produce some direct testimony to show that there were goods and merchandise of the character insured, on his premises at the time of the fire, and not leave that fact to be inferred by proving that

he usually made a profit on sales, and that there must, therefore, have been unsold goods on hand. Admitting that the law will allow the plaintiff, in a case of this kind, to excuse his non-performance of the obligations imposed upon him by the policy to furnish an itemized statement of what the property was, and the separate value of each item, which he claims to have been destroyed, by offering testimony to show that he could not comply with the provision because of the burning of his books, and in such a case to show the value by proving his accustomed profits, he must, before he can do so, produce some direct evidence that there were some goods of the kind insured on the premises destroyed before he can be admitted to prove their value by this indirect proof. In other words, the jury should not be permitted to infer both the existence of the property and its value from such evidence. There is no direct testimony in the record to the effect that any goods named in the policy were on the premises.

The first exception taken by the appellant was to the admissibility of certain testimony. The witness for the appellee had testified that in arriving at the loss he had calculated on 40 per cent. profit on the goods sold. He also testified what that profit consisted of, and that when the goods were manufactured 40 per cent. was added to the manufacturing cost to arrive at the selling price ; that in this manner the selling price was fixed, which was given to the salesmen. Thereupon the witness was allowed to testify to the profits for various years prior to the fire. It was to this latter testimony that the appellant took exception. Such testimony was speculative and absolutely irrelevant to the issues in this case, and was improper to be submitted to the jury. The Court should not have allowed the jury to speculate from testimony as to profits in previous years, as to what the profits in the particular year in question were or would have been. Such testimony is purely speculative and should have been excluded.

The second exception was also taken to the admissibility

of certain testimony.   The witness was asked whether 40 per cent. was a reasonable profit.   This witness had never been in the business of manufacturing cloaks, but had been in the business of manufacturing clothing ; he had no control over the sales and did not fix the prices.   The testimony does not show that the witness knew what profits were made by other persons in the same business or that profits in the clothing business and the cloak business are the same.   Simply because a person is in a manufacturing business does not make him competent to testify as to whether a profit made in another manufacturing business is reasonable.   In fact, from all the testimony shows, this witness knew no more about the profits made in the cloak business in general than anyone else.   The question propounded to him, should therefore not have been allowed. The testimony was in no way admissible, even if the witness was an expert.   Can it be possible that without any testimony that there were any goods burned, the plaintiff can prove their value by offering testimony tending to show what would have been a reasonable profit for him to have made, much less to prove the fact that there were any goods burned ?

The fourth exception was taken because the Court refused to allow the appellant to ask the plaintiff on cross-examination whether the agent of the defendant ever refused to allow the plaintiff to correct his written examination.   The witness Keene had testified that he had not signed the written report of the examination because it was full of errors ; that he had gone over the report and had made a few corrections ; that he never tendered it signed in any way to Mr. Bond ; that he never saw Mr. Bond with regard to correcting or signing it.   Under this state of facts it surely was perfectly proper for the appellant to show that Mr. Bond had never refused to allow corrections to be made.   It was a very material fact for the appellant to show that there had been no refusal to allow any correction if it was a fact, as the witness Keene testified, that the report was full of errors.   Of.

course, if the report had *material* errors in it, and there was a refusal to allow a correction of them, the appellant could not stand on the terms of its policy and require a signature to an examination that was clearly wrong. If wrong, it should have been corrected. There had been a partial correction. It, therefore, became both material and relevant for the appellant to show that a complete correction and lack of signature, therefore, was not its fault. That this question was admissible and material clearly appears from the fact that the plaintiff, in his replication to the sixth plea, distinctly avers as an excuse for not signing his examination that he was not allowed to correct it. How can it be improper to ask the plaintiff, then, whether permission to correct this examination was in fact refused him?

The fifth exception was to the refusal of the Court to allow the appellant to ask its witness what he had said to Mr. Listner at the time of the delivery to him of the copy of the examination. The witness Bond had testified that he gave a copy of the examination to Mr. Listner. Listner was the adjuster for the appellee; he was acting for the appellee in regard to the fire; he made out the proof of loss, suggested the answers to certain letters and was present at the examination. In other words, he was the agent of Langfeld & Co., and was acting for the plaintiff. If the copy had been delivered by the witness Bond, directly to Keene, would it not have been a legitimate question to ask the purport of the conversation at the time of delivery, in order to find out what instructions had been given or what request or demand made? If so, then such a question was a proper one to be asked the agent. By the refusal to allow this question, the Court deprived the defendant of its undoubted right to prove that at the time of the delivery of the copy to Listner, it demanded a signature to the copy. The Court then, by granting the plaintiff's second prayer, made the lack of such demand one of the conditions upon which the jury were told that they could find for the plaintiff. The question was undoubtedly proper, and should have been allowed.

The sixth exception was taken to the granting of the plaintiff's prayers and the refusal of the defendant's. The first question which arises under this exception is, whether the schedule statement of loss contained in the proof of loss is a sufficient compliance with the terms of the policy. It has been decided that the sufficiency of the proof of loss is a question of law for the Court. *Ins. Co.* v. *Stibbe*, 46 Md. 312 ; *Ins. Co.* v. *Doll*, 35 Md. 89, 102. The policy makes the furnishing of proof of loss a condition precedent to the plaintiff's right to recover. *Ins. Co.* v. *Doll*, 35 Md. 89.

The insured is required to furnish a statement containing the cash value of each item of property and the amount of loss thereon. To fulfill this requirement he furnished a statement showing the value of goods on hand January 1st, 1893, the amount of goods bought in 1893. From the sum of these two amounts he deducted the amount of sales in 1893, after allowing for profits on sales, and thus arrives at the amount of goods on hand at the time of the fire and burned. Such statements have repeatedly been decided not to fulfill the terms of the policy. *Stickney* v. *Ins. Co.*, 23 U. P. Can. (C. P.) 372 ; *Banting* v. *Ins. Co.*, 25 Up. Can. (Q. B.) 431 ;. *Gauche* v. *Ins. Co.*, 10 Fed. Rep. 347 ; *Ins. Co.* v. *Updegraff*, 40 Pa. St. 311 ; *Beatty* v. *Ins. Co.*, 66 Pa. St. 9.

As an excuse for furnishing no better statement, he says that his books were burned. The proof shows that there was a book showing the inventory taken in December, 1892, a book showing purchases in 1893, and a book showing sales in 1893. As to what any of these books show, he does not pretend to specifically set forth. This information the company was entitled to know under the terms of its policy. It was entitled to know what specific goods were comprised in the inventory, the value of which was given as $22,131.46. It was also entitled to know the character and amounts of the various purchases and sales comprised in the two items of $107,821.00 and $169,215.25, all of which the testimony shows the plaintiff was able to give. In the *Stickney case*, *supra*, the Court decided a statement of loss similar

in all respects to the statement in this case insufficient, because the insured had in his possession certain books which would have furnished valuable information. Then again the statement of loss required by the terms of the policy, was not required by the policy to be made up from the books. The statement was required. Therefore, if there was any other method of making it, outside or irrespective of the books, the loss of the books would be no excuse for not making it. No doubt the use of the books is the best method, but then there are others, such as the recollection of the insured and his employees. It was this latter method that the appellant called on the insured to use, by its letter of February 16th. It was the lack of the use of this latter method that led the Court to declare the statement of loss, in the *Beatty case, supra,* bad. In that case, the statement of loss set forth that there was furniture burned to the value of so much. The Court decided such a statement insufficient, because, as it said, the insured could certainly set forth at least some of the articles of furniture burned and their values.

Where a policy required duplicate bill of purchases the originals having been burnt, the Courts have held that the burden of proof is on the insured to show why duplicate bills were not furnished on request, and that it would not be assumed that they could not be obtained from the various merchants from whom goods were purchased. *Insurance Co.* v. *Mispelhorn,* 50 Md. 180; *O'Brien* v. *Insurance Co.,* 63 N. Y. 108.

That the burden is on the insured to show that it was not possible for him to comply with the terms of the policy by the use of all reasonable means within his power. *Mispelhorn* v. *Insurance Co.,* 53 Md. 473, 484.

So in this case the burden is on the insured to show that he could not furnish a better statement by the use of all reasonable means within his power. This he does not attempt to do. He says he could not furnish it because his books were burned. Why he could not furnish it from the

books he had, together with the recollection of his employees, he does not attempt to show; nor to show that he made any effort to furnish it in this way. Not having met this burden he failed to show that, under the circumstances of this case, the statement of loss was the best statement which it was in his power to furnish. Meeting this burden was the only way to make the question of sufficiency a question of fact instead of one of law. Therefore the question of the sufficiency of the statement was a question of law for the Court, and had not, by reason of the testimony, become a question of fact for the jury. Therefore, some one of the defendant's first five prayers should have been granted, and the plaintiff's first prayer should have been rejected.

The defendant, by its sixth prayer, asked the Court to instruct the jury that the plaintiff was not entitled to recover, because he had not subscribed the written examination to which he had submitted under the terms of the policy. It has been held that examinations of this kind must be subscribed, and that the plaintiff cannot recover unless he does so. *Bonner* v. *Insurance Co.*, 13 Wis. 677 ; *Grigsby* v. *Insurance Co.*, 40 Mo. Ap. 276.

The insured was examined both by the adjuster of the Insurance Company and by his own adjuster. This examination was taken down in short hand and afterwards typewritten, and a copy sent to him which, without any communication to the company of any errors therein he never signed, and at the trial table for the first time, gave as his excuse for not signing, that the copy was full of errors. It is not contended that if inaccurate, in substantial matters, the insured was bound to sign ; but it is contended that the bare allegation that the copy was full of errors without any communication of such errors to the company so as to allow a correction, and without any evidence to show what was the nature of the errors, is no sufficient excuse for the want of a signature. The condition of the policy is clear and was accepted by the insured. The burden is, therefore, on him,

to show why he failed to comply with it. If the errors were merely typographical, surely it would be no sufficient excuse for not signing ; as to whether they were merely typographical, or of some other unimportant kind, or were absolute misstatements, the evidence does not show. He therefore has not met the burden of proof cast upon him, and shown a sufficient excuse for not signing. Therefore, the defendant's sixth prayer should have been granted. Instead of granting this prayer the Court granted the plaintiff's second prayer, which told the jury that if the subscription was not made because of errors and no demand for or insistance upon such subscription was made by the defendant, then the excuse for not signing was sufficient in law. Now it is submitted that even if the defendant's sixth prayer does not state the law correctly that the law is not correctly stated in this second prayer. It should have been left to the jury to say whether or not the errors were of a character to furnish a sufficient excuse. In a Missouri case where the insured refused to submit to an examination at an appointed time because he was just about to leave town, the Court says that it is a question for the jury to say whether or not his excuse was sufficient. *Phillips* v. *Insurance Co.,* 14 Mo. 233.

Then again there is no law requiring " a demand for or insistance upon a subscription." The terms of the policy require a subscription. The insured had entered into a contract to subscribe. Therefore when he received the copy of the examination it became his duty to subscribe without any demand other than the presentation of the copy itself, which was a demand in law.

The defendant by its seventh prayer asked the Court to instruct the jury that the plaintiff was not entitled to recover because he had not furnished a copy of all descriptions and schedules in all policies which had been duly demanded. This he had contracted to do by the terms of his policy, and they were duly demanded by the defendant's letters of February 2d and 16th. He did furnish a list of

all policies, which he attached to his proof of loss. This list, however, does not show on what property the various policies therein mentioned were issued. In order to find out whether these policies covered the property covered by the policy sued on, the defendant was entitled to a copy of the descriptions and schedules contained in them. *Blakeley* v. *Insurance Co.*, 20 Wis. 205 ; *Miller* v. *Insurance Co.*, 70 Iowa, 704.

Under the terms of the policy the plaintiff was not entitled to sue until he had complied with all the requirements of the policy. For this reason the defendant's seventh prayer should have been granted.

*Wm. Pinkney Whyte*, for the appellee, submitted the cause on his brief.

ROBERTS, J., delivered the opinion of the Court.

This suit was brought to recover on a policy of insurance against loss by fire. The policy was written by the appellant in favor of D. Langfeld & Co., who were engaged in the business of manufacturing ladies' clothing. The property insured is described in the policy in these words :

"$5,000 on merchandise, consisting principally of dry goods and ladies' ready-made clothing, and on all materials used in their business as manufacturers of same, their own, or held in trust or consignment, or commission or sold, but not removed while contained in the brick building situate No. 32 S. Paca street, Baltimore, Md., communicating through fire-proof boiler house in basement with No. 34 S. Paca st., opening protected by fire-doors."

In addition to this policy there were risks written by sixteen other companies on the same stock, the aggregate of the sixteen policies being forty thousand dollars. The usual conditions were annexed to and formed parts of the policy. A fire occurred on December the second, 1893, within the period of time covered by the policy sued on, and the entire stock and machinery of the assured as well as most of their

books were totally destroyed. Proof of loss was furnished, but was objected to as insufficient; and upon this and other grounds to be stated presently the insurer refused to pay the loss and thereafter this suit was brought. The refusal of the appellant to pay the amount of the loss insured against in the policy issued by it is founded on several grounds which may be briefly summarized as follows, viz., that the proof of loss was not sufficient in that it did not contain a statement in detail of the stock and materials on hand at the time of the fire, nor set forth the cash value of each item thereof and the extent to which each article was damaged; that the assured had not furnished, as required by the policy, within sixty days after the loss, a copy of the descriptions and schedules in other policies written upon the same property; that the assured refused to subscribe an examination taken by a person designated and appointed by the insurer; and that notwithstanding a difference arose between the assured and the insurer respecting the amount of the loss sustained by the former, the assured refused to enter into an appraisement as provided for in the policy, in such a contingency, although a demand was made for such appraisal by the underwriter.

During the progress of the trial six bills of exception were taken and they present the questions to be disposed of on this appeal. Under the rulings and instructions of the Superior Court the jury rendered a verdict in favor of the assured for the full amount claimed to be due by the terms of the policy and upon that verdict a judgment was duly entered. From that judgment the insurance company has prosecuted the pending appeal.

There was no dispute respecting the execution and delivery of the policy, the payment of the exacted premium and the subsequent loss and destruction of whatever property was on the premises when the fire occurred. Nor was there any denial that the loss, if a loss was sustained at all, was a total and complete one. The controverted question at the threshold was, whether there was sufficient evidence

to show that any of the materials described in the policy were in fact destroyed by the fire. The first, second and third exceptions and the appellants' fourth and fifth prayers in the sixth exception involve this inquiry, and may be considered and discussed together, because upon the correctness of the rulings on the objections set forth in the first three exceptions depends the propriety of the Court's action in rejecting the two prayers just designated by their numbers.

We have said that most of the appellee's books were destroyed in the fire. The only ones saved were the sales' book, or the day book, showing the amount of daily sales ; the purchase book, showing the amount of merchandise bought from January 1st, 1893, up to the time of the fire ; and the book of expenditures, showing the amount paid out in manufacturing between the same dates. Now, it is obvious, that to entitle the assured to recover it was incumbent on him to show to the satisfaction of the jury, first, that he had sustained a loss by fire ; and, secondly, what the amount of that loss was—not with exact mathematical precision, but with a reasonable measure of certainty. Confessedly all that he had on the premises described in the policy was destroyed ; his most valuable and important books had been burned, and there is no pretence that from mere memory he could possibly have stated the quantity or description of a stock of goods, such as it is apparent, he carried. But his inability to do this, arising, as it clearly does, from the very misfortune against whose disasters the appellants wrote the insurance, can scarcely, in a Court of justice, be considered a valid and sufficient ground to defeat his claims for indemnity. Deprived by the casualty which the policy was designed to reimburse him for, of the best means to compute the precise amount of his loss, by no means precluded him from resorting to other, even if less satisfactory methods of laying that branch of his case before the jury. And to other methods he did resort. He showed most incontestibly that the amount of

stock which he had on hand the first day of January, 1893,
was $22,131.46. He then showed by his book of pur-
chases that from that date to the day of the fire he had
bought $107,821.00 worth of materials, and by one of his
other books saved from the fire, that the cost paid for man-
ufacturing during the same period had been $35,311.04,
making a grand total of $165,263.50. He likewise dem-
onstrated from his day book, or book of sales, that his sales
during the same period had been $169,215.25, and that the
average or usual profit included in this gross amount of
sales was forty per cent., or $48,347.00, which on being
deducted from the gross amount of sales showed the cost
value of the manufactured articles sold to be $120,868.25,
and that sum being deducted from $165,263.50—the ag-
gregate of the inventory, the merchandise bought and the
cost of manufacture—left the sum of $44,395.25 as the
value of the goods and materials in stock when the fire
occurred. This process is the one objected to in the ex-
ceptions now being considered. Without pausing to con-
sider the specific questions objected to, because such a ,
course is wholly unnecessary, we deem it only necessary to
say that there was no error in allowing the questions to be
asked which elicited this result. But a single observation
is all that is needed to illustrate the correctness of this con-
clusion. Were this method of ascertaining the value of
the goods destroyed excluded, there would be no possible
way in the event of a total loss of the goods themselves
and the books of the assured, to arrive at even an approxi-
mate estimate of the amount of the loss, for it is not to be
assumed that in a large business establishment either the
proprietor or his employees can carry in their minds a
schedule of the stock in trade. And if the method of proof
allowed by the Court below were excluded, then, in the
case supposed (which is, in fact, the case at bar), no proof
could be adduced at all ; and it would follow that the more
complete and disastrous the conflagration the less would be
the liability of the insurer. A ruling leading to such a con-

clusion is obviously illogical and untenable.    We find, there-fore, no error in the rulings set forth in the *first, second* and *third* exceptions and in the rejection of the appellants' *fourth* and *fifth* prayers.

The question presented by the fourth exception arose in this way :    The conditions annexed to the policy provide, amongst other things, that " the insured, as often as required, shall submit to examinations under oath by any person named by this company, and subscribe the same, &c."    On March 5th, 1894, Mr. Thomas E. Bond, adjuster, required the ap-pellee to submit to an examination under oath.    No au-thority from the company to Mr. Bond to make the exami-nation was shown the appellee, but he nevertheless did undergo an examination, which was taken down by a stenographer, and he states he produced what books he had.    He further testifies that Mr. Bond never asked him to sign the examination, and that he did not sign it because as taken down it was full of errors.    He likewise stated that he was not asked to sign it.    He was then asked whether Mr. Bond ever refused to let him, the appellee, correct the statement.    The question was objected to, the Court sustained the objection, and hence the fourth excep-tion.    The question was irrelevant.    It did not appear that Mr. Bond had been appointed by the company to make the examination, and the appellee was under no obligation to submit to or to sign an examination until he had been in-formed that some person had, in the language of the policy, been " named by " the company to make it ; and whether Mr. Bond refused to let the appellee correct errors in the stenographic report of the examination was under the cir-cumstances wholly immaterial as respects the liability of the company.    If the company desired the statement signed it should have demanded that the appellee sign it.    The mere fact that Mr. Bond did not refuse to correct any errors in the copy was no evidence that the company either ex-acted or insisted on the signature.    It literally proved nothing.

The fifth exception also presents a question of the admissibility of evidence.    Listner was the adjuster for the appellee ; he made out the proof of loss and was present at the examination alluded to in discussing the preceding exceptions.    Mr. Bond testified that he had given a copy of the examination to Listner, and he was then asked, "What did you say to Mr. Listner at the time you gave him the copy of the deposition of Mr. Keene," the appellee ?    An objection was made which the Court sustained and this ruling is the one complained of in the fifth exception.    Clearly there was no error in this ruling.    Nothing that Mr. Bond said to Mr. Listner could affect in any way the rights of the appellee.    There is no pretence that Listner had any authority to bind the appellee.    Listner was the appellee's adjuster, and any declaration made by Bond to him about a totally different subject, viz., the written examination of the appellee, could not possibly bind the appellee.    The proffered evidence was wholly irrelevant.

The remaining exception relates to the prayers.    The appellant presented seven, all of which were rejected.    The appellee offered four, the first, second and fourth of which were granted, the third not being in the record ; and the learned Judge of the Superior Court gave an instruction of his own.    The appellant filed special exceptions to the granting of the appellee's first and fourth prayers.    We find no errors in the granted prayers.    The first prayer asks the Court to instruct the jury, that if they find from the evidence that the defendant made the policy of insurance offered in evidence, and delivered the same to the plaintiff; and further find that the property described in said policy was totally destroyed by fire, on or about the second day of December, 1893 ; and that the defendant had notice of the fire at the time thereof, and that the plaintiff furnished the proofs of loss referred to in the evidence, together with the certificate of the magistrate, and furnished, so far as it was possible for him so to do, an inventory of the property destroyed, stating the quantity and cost of each article and the amount

claimed thereon ; and furnished so far as it was possible for
him so to do, the cash value of each item and the amount
of loss thereon ; and also furnished the copy of all the de-
scriptions and schedules in all the policies, then the plaintiff
is entitled to recover.   This prayer is clearly sound if sup-
ported by the evidence ; and we think the evidence alluded
to in considering the first, second and third exceptions was
quite sufficient to go to the jury, and if believed by them,
to support the hypothesis of the instruction.   (50 Md. 193).
The second instruction is not open to criticism.   There was
evidence, if credited, to support the facts, hypothetically
submitted, and if the jury found those facts, then obviously
the failure of the appellee to sign the examination hereto-
fore mentioned furnished no reason for the refusal of the ap-
pellant to pay the loss.   The fourth prayer is not obnoxious
to the special exception filed to it for the same reason we
have given in disposing of the special exception to the first
prayer.   The legal principle it announces is sound, and is
that generally applied in estimating damages in such cases
as this and in apportioning them amongst contributing com-
panies.

  · The first, second and third prayers of the appellant were
properly rejected.   They relate to the proof of loss and its
legal sufficiency.   The proof of loss furnished in this case—
a case of total loss—was under the circumstances all that
could have been required.   These prayers exacting a more
detailed proof were consequently erroneous.   The sixth
prayer being the converse of the appellee's second and the
latter being right, the former must be wrong.   The seventh
prayer asserts that the appellee did not furnish a copy of all
the descriptions and schedules in all policies as he was re-
quired to do under the terms of the policy sued on, and inas-
much as the evidence shows that such description and sched-
ules were duly demanded by the defendant, the verdict of
the jury must be for the defendant.   But the evidence does
not justify the assumption of facts contained in this prayer.
The proof of loss distinctly gave the names of the other six-

teen companies having policies on this property. It gave the numbers of these policies, the amounts covered by each and the dates of their respective expiration ; and it expressly stated that " full copies of the written portions of all other policies and endorsements, transfers and assignments are hereto annexed, or will be furnished on demand." The requirement was substantially complied with. The written portion of the policy sued on was set out and, as stated, the names of the other companies holding policies on *the same property*, a statement of the respective amounts and of the dates showing that they were concurrent with the policy in suit, constituted a substantial compliance with the condition relied on in the seventh prayer. (*Jones* v. *Howard Ins. Co.*, 22 Northeastern Rep. 578 ; *Keeney* v. *Ins. Co.*, 71 N. Y. 396). The Court's instruction was clearly right under the case of *Citizens' Fire Ins. Co.* v. *Doll*, 35 Md. 103. Finding no errors the judgment will be affirmed with costs above and below.

> *Judgment affirmed with costs above and below.*

(Decided March 31st, 1897).